Thurman Davis v. The State.

No. 8399.   Delivered February 4, 1925.

Rehearing Granted June 24, 1925.

Rehearing Denied State October 14, 1925.

</div>

**1.—Burglary—Change of Venue—Properly Refused.**

Where a motion for a change of venue is made, and after hearing the evidence, the trial court refuses to change the venue, his action will not be set aside on appeal, unless it is clearly shown that he was in error. A review of the evidence presented on the issue in the instant case, does not show conditions which would entitle appellant to a change of venue, and no error is shown in its refusal.

**2.—Same—Evidence—Conspiracy—Properly Admitted.**

Where evidence of a conspiracy between the appellant and two accomplices to burglarize and steal cotton from numerous farms in a community, all acts of the parties in visiting and stealing cotton from several pens on the same night were properly admitted, as disclosing acts done in pursuance of the conspiracy and of the original purpose of all. It also appears to us that such acts in pursuance of said conspiracy, were all a part of the *res gestae*, and admissible also on that ground. Distinguishing Long v. State, 39 Tex. Crim. Rep. 537 and Hunt v. State, 229 S. W. 873.

**3.—Same—Evidence—Conviction and Pardon—Variance—Cured.**

Where upon objection raised to the competency of a witness who had been convicted of a felony, the introduction of a pardon of an offense committed at the December, 1921 term of the Court, while the judgment showed a conviction at the February term 1921 of the Court, the qualifications of the trial judge that he had sat on the trial and conviction of witness, and that the pardon offered, covered the conviction, which was in fact at the February, 1921 term, the witness was properly held competent.

**4.—Same—Accomplice Testimony—Corroboration Thereof—Held Sufficient.**

Where the testimony of two accomplices is used by the State, and their testimony is corroborated by numerous witnesses and physical facts, tending to connect appellant with the commission of the offense, the refusal of a peremptory instruction that there was not sufficient corroboration was not error.

**5.—Same—House—Definition Of—Held Correct.**

. Where the court instructed the jury that a cotton pen was a house within the meaning of our burglary statute, no error is shown. It was shown to have been built of posts, or logs, about four feet high on one side

and three on the other, floored and covered with planks, and was used as a receptacle for storing cotton. Following Barker v. State, 69 S. W. Rep. 515 and many other cases cited in opinion.

6 —Same—Accomplice Testimony—Corroboration—Of Burglary—Sufficient.

Where a conspiracy is shown, and both burglary and theft are proven, it cannot be contended that the corroboration of the accomplice testimony as to theft was sufficient, and not as to the burglary, where the burglary was necessarily followed by the theft.

### ON REHEARING.

7.—Same—Charge of Venue—Reconsidered.

In the light of appellant's motion for rehearing, we have carefully re-examined the testimony adduced on the hearing of his motion for a change of venue. While it was not shown that there was such a prejudice against him throughout the entire county, it was shown to exist in Mt. Vernon and the immediate vicinity thereof, and if a new trial is had, it would be well to carefully weigh the evidence presented on this issue.

8.—Same—Misconduct of Jury—New Trial—Erroneously Refused.

Where in a motion for a new trial, misconduct of the jury is set out, and on a hearing of said motion the evidence clearly establishes that one of the juror's who served on the jury, and who qualified on his voir dire examination, and whom the appellant did not know until after the verdict, was unfair, had such a prejudice against the appellant, as to defeat that fair and impartial trial guaranteed the accused, a new trial should have been granted.

9.—Same—New Trial—Prejudiced Juror—Discretion of Court.

We think this case by reason of the facts recited, does not fall within the rule that where issue is joined upon such a question and the evidence thereon is in conflict, the discretion of the trial judge will not ordinarily be disturbed, but are of the opinion that the fairness of the jury trying appellant has been impeached by showing thereon the presence of a juror so prejudiced against him as to deprive him of a trial by a fair and impartial jury, as is contemplated by the law, and his motion for rehearing is granted and the cause reversed and remander. See authorities cited on rehearing.

### ON REHEARING BY STATE.

10.—Same—New Trial—Prejudiced Juror—Improperly Refused.

While it is true that where on the issue of a prejudiced juror sitting on a trial, evidence is heard on the issue, the court in its discretion passes upon the evidence, and its action is not often disturbed, yet, where the evidence shows conclusively that a juror had previous to the trial expressed his prejucides against appellant, and concealed this fact on his *voir dire* examination, a new trial should have been granted, and the motion for rehearing by the state is overruled.

Appeal from the District Court of Franklin county. Tried below before the Hon. R. T. Wilkinson, Judge.

Appeal from a conviction of burglary; penalty, two years in the State penitentiary.

The opinion states the case.

*J. H. Beavers,* and *F. B. Caudle,* for appellant.

101 Tex. Crim.—23.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Franklin county of burglary, and his punishment fixed at two years in the penitentiary.

The State's theory is that appellant had picking cotton for him one Rozier and Moore, paying them one dollar per hundred pounds and that he proposed to them that if they would get other cotton for him out of the pens or fields of other people, that he would pay them one dollar per hundred for such illegally gotten cotton, and that upon their agreement he took them in his car and drove around the country until they came to the field in which was the alleged burglarized cotton pen, and that he waited in his car in the road while they went to the pen, burglarized it and brought back to him cotton stolen by them, which was later mingled with other seed cotton belonging to appellant and appropriated by him.

Appellant asked for a change of venue upon the calling of the case. The basis of his application was that there existed in Franklin county such prejudice against him as that in the opinion of the compurgators a fair and impartial trial could not be had in said county. The means of knowledge of his compurgators being properly challenged by the State in a traverse of the motion in which it was averred also that a jury unprejudiced could easily be obtained in said county, the court heard evidence and refused the application. On the issue thus joined each side brought forward eleven witnesses, and in order that the correctness of our view may appear, we set out briefly the testimony of the witnesses for appellant.

Mr. Cowan on direct examination doubted if a fair jury could be obtained in this case, but on cross-examination said he thought by following the legal methods it could be gotten. Tom Holder said he based his opinion that it would be difficult to get a fair jury on what he had heard around the town of Mt. Vernon. Asked as to a number of communities in the county outside of Mt. Vernon, he said he knew nothing of the sentiment of such parts of the county toward appellant. Tinker said he "didn't hardly know whether appellant could get a fair trial in the county", but that a jury might be gotten away from Mt. Vernon which would give him a fair trial. Carson said he could not recall any place where he had heard appellant discussed except in Mt. Vernon. He said he had lost confidence in the jury system but knew of no better way to conduct trials. He testified that he had heard appellant discussed "a good deal", but further said that "You could pick plenty of men in this county who would make fair jurors . . . . the greater per cent of the jurors if they were asked would say that they held prejudice and would thereby disqualify themselves." Rees said, "I can't say that

I don't believe defendant can't get a fair trial in Franklin county. I guess there are lots of good men in Franklin county that have never heard of Thurman Davis.'' C. T. Holder said he had heard appellant discussed in his neighborhood, and a little in Mt. Vernon, but could have no opinion as to how people felt anywhere in the county except in the community in which he lived. Burns said he could not say appellant could not get a fair trial in the county, and on redirect examination said he thought he could get that character of trial. Stephenson said he thought by asking the proper questions it would be easy enough to get a jury who would give appellant a fair trial. Ezzell said he was on a jury which had tried appellant in a liquor case about a year before and had given him a suspended sentence. That he knew of no prejudice against appellant. Liles was also on the jury just mentioned and believed appellant could get a fair and impartial trial in Franklin county. McBrayer was also on said jury and it seems to him appellant ought to be able to get a fair trial in the county. The State put eleven witnesses on the stand who disclosed extensive acquaintance in the county, all of whom averred their belief that appellant could get a fair and impartial trial in the county. We entertain no doubt as to the correctness of the overruling of the application. We have not tried to set out all of the testimony of appellant's witnesses, but have merely reproduced such part of their statements as manifests the fact that by them appellant did not establish the existence of prejudice against him. Appellant had been tried in a liquor case, as above mentioned, convicted and given a suspended sentence, and the judge at the time criticised the jurors for such supension, but this does not seem to us to be very strong testimony establishing prejudice against appellant. It seems also that he had been discussed to some extent in connection with other criminal matters, the kind and character of none of which are detailed. Some of the witnesses said they thought there was prejudice against him but that it was not such as would invade the jury box. Some thought otherwise. If appellant had ever been convicted or legally charged with other crimes or offenses than the liquor case mentioned, we fail to find it in testimony.

The State relied chiefly for conviction on accomplice witnesses Moore and Rozier, who testified that they were picking cotton for appellant; that he was paying them a dollar a hundred for picking, and that he proposed in substance to pay them the same amount for all cotton they would steal for him, and that so purposing, on the night in question, they got in appellant's car with him and hailed forth questing for cotton which might be purloined; that they found none in the first field visited by the party, but a little later went to Mr. Irby's field and appellant told them to go see if there was any there and that they went and found the pen in question, and came back and told him about it, and he told them to go and get the cot-

ton; that they went back to the pen, removed the plank-cover and carried back to appellant, who was waiting at a point some 250 yards from the pen, two sacks of the stolen cotton which they all then carried to appellant's field and mingled it with cotton belonging to him; that appellant then wanted them to go back to Irby's field and get the remainder of the cotton in the pen but they refused. By several bills of exception directed at the testimony of each of said witnesses appellant objects to their testimony that they went to another field searching for cotton before they got to that of Irby's, and also that after they had abstracted a part of Mr. Irby's cotton, appellant wanted them to go back and get the remainder. We confess ourselves at a loss to understand just how this was not all part of the *res gestae* of this transaction. Certainly it was not proof of a separate theft or burglary. If parties conspire to commit a crime, what was said and done in pursuance of said conspiracy while engaged in the criminal enterprise, seems always admissible. The object of the conspiracy testified to by the accomplices was to criminally obtain the cotton of appellant's neighbors. The burglary of Mr. Irby's pen was seemingly a necessary incident to the criminal enterprise and all that was said and done by appellant in the execution of the original purpose would seem to be properly received in testimony. We find nothing in the cases cited in the able brief of appellant from Long v. State, 39 Tex. Crim. Rep. 537, and Hunt v. State, 229 S. W. Rep. 873, in any way combating our views here expressed.

When Rozier was offered by the State appellant objected that he was an unpardoned convict. The State then produced a pardon issued to Rozier. Still objecting, appellant called attention to the fact that the judgment of conviction against Rozier was entered at the February, 1921, term of the District court of Franklin county, and that the offered pardon recited therein that Rozier was pardoned for an offense committed at the December, 1921 term of said county, and appellant insisted that this was therefore a pardon for a different offense and conviction from that relied upon as barring the testimony. The objection was overruled and the bill then taken by appellant is qualified by the statement of the Honorable trial judge to the effect that he was the presiding judge at the trial and conviction of Rozier at the February, 1921, term of the district court of Franklin county, and that there was no December, 1921, term of said court. The judge of a court may append to a bill of exceptions matters of which he has judicial knowledge, and such appears to be the nature of the matters stated in this qualification here. So considered, it is clear that the seeming variance in the issuance of the pardon was fully explained, and the witness was properly permitted to testify.

Upon the ground that there was not sufficient corroboration of the accomplice witnesses, appellant sought an instructed verdict, the refusal of which is complained of in bill of exceptions No. 7. With reference to corroborating testimony, we observe that the sheriff testified that on the morning after the alleged burglary he went out to the Irby place and observed men's tracks leading from the road to the pen where the Irby cotton had been stolen, which was about 150 or 200 yards west of the road; that he could see car tracks where the car had been driven about 100 yards past the pen and apparently stopped; that at the point where witness thought the car had stopped in the road were tracks of human beings, some of the tracks being on each side and some in the middle of the road. These tracks left the road and went to the cotton pen in Mr. Irby's field and then went from the pen back to the road about the place where the witness thought the car had stopped. Rozier and Moore were found picking cotton in appellant's field the morning after the alleged burglary and were taken by the officers to the Irby field and their feet fitted in tracks there found and they corresponded. Mr. Campbell, the sheriff, said that these tracks appeared to go twice from the point in the road where he thought the car stopped, up to the cotton pen and back. The two accomplice witnesses testified that when the car stopped near Mr. Irby's field, they went together out in the field and located the pen with the cotton in it and came back to the car and told appellant what they had found, and he then told them to go back and get the cotton. Mr. Campbell said the two front casings on appellant's car were just alike and that he had never seen two casings on the same car like those before. One of the rear casings on appellant's car was a Goodyear and witness said he was familiar with the kind of tires defendant had on his car at that time, which corresponded with the car tracks found near the field of Irby. Witness said he followed the car tracks from the point near the Irby field where he thought the car had stopped, down to a gin where the tracks turned to the right and went through and struck the Purley road about 150 yards from the home of one Carl Davis, and that said tracks came up the Purley road to appellant's field and on past the cross fence between Carl Davis and appellant to a point where it appeared the car had stopped again, and that they then followed the tracks found to correspond to the feet of Rozier and Moore from the place where the car had stopped through appellant's field to where there had been a cotton pile. There had been a little sprinkle of rain the night before and the car tracks showed up plainly. Mr. Gamble testified that he lived about 250 yards from the Irby cotton field where the alleged burglary took place and that between two and three o'clock on the night of the alleged burglary he went out doors from his home to attend a call of nature and saw a car parked in the road about 200 yards above his house, and in about five

or ten minutes it started and went on; it had no lights and witness saw something in the back of the car that looked like a bundle of bedding; the car passed in about 40 yards of the witness. Carl Davis testified that his place joined appellant's on the south; that he was at home the night the Irby cotton was taken; that he heard a car pass his house going north about three o'clock in the morning and that he judged the car to be a Ford. Robert Arrington, testified that on the night in question he was in the town of Mt. Vernon and around nine o'clock went with Bill Majors, Hiram Majors and Thurman Davis out to the place of the latter where they engaged in a card game until about two o'clock that night. That he saw Rozier and Moore in Mt. Vernon before they left, and saw appellant talking to said two men; after he talked to them he and the other parties named got in a car and went out to appellant's place. In about thirty or forty minutes Rozier and Moore came into the house where they were playing and sat around for a few minutes and went on into the other room. There were two rooms to the house. This witness testified that appellant had talked to him about his testimony and had said that, "We could have us going to Sulphur Springs and leave the poker game out." On cross-examination witness said that appellant told him he would want him as a witness to show where he was that night, and he said, "We could have us going to Sulphur Springs and leave out the poker game." When they left appellant's house the night of the burglary he brought them to town in his car. He did not know where appellant went after he let them out of his car. He heard no noise as of any one leaving the house in which they were playing poker or as of the starting of a car while they were at the house. When he came out of the house after the card game was over he did not notice the car having been moved. Bill Majors testified about going out to appellant's place in his car and playing poker, and about Moore and Rozier coming out to the place, sitting around awhile and then going into an adjoining room. He also said they left the place about two o'clock. He said that appellant had talked to him about his testimony and had suggested that something could be said about a trip to Sulphur Springs, but said appellant did not suggest to him that he swear they went to Sulphur Springs. It was in testimony that on the morning following the alleged burglary appellant took Rozier in his car to carry him apparently to the field to pick cotton. Appellant's father testified that on the morning after the alleged burglary appellant and a negro came to get his wagon to be used in hauling cotton. He said it was tolerably early that morning. This witness said that he saw the wagon when it was brought back with cotton on it and that it appeared to have eight or nine hundred pounds of cotton on it. In its rebuttal the State introduced witness Dewett who testified that he lived on appellant's place, and that on the Saturday before

the. alleged burglary on Monday night he was over in the field of appellant looking at his cotton pile and estimated that there were not over 300 pounds in the pile. This witness said that during Monday, Rozier and Moore picked there in the field and that one of them told him that they picked something over 100 pounds. He said the wagon was brought out Tuesday morning and the cotton in appellant's cotton pile was carried away, and that on Wednesday he asked appellant how much cotton he had on his wagon and he said 980 pounds. Mr. Irby testified that 368 pounds of cotton were taken from his pen the night of the burglary. We regret that we are unable to agree with appellant's contention that there is no testimony aside from that of the accomplices tending to connect him with the commission of the alleged offense. We have not undertaken to state all the facts which in our opinion justify our conclusion that there is enough corroborative testimony in the record.

It was not error for the court to tell the jury that the cotton pen was a house within the meaning of our burglary statute. Willis v. State, 33 Tex. Crim. Rep. 168; nor do we agree with the objection that such structure was not a house. It was built of posts or logs about four feet high on one side and three on the other, was floored and covered with planks, and was used as a receptacle for the storage of cotton. Appellant cites Clark v. State, 120 S. W., Rep. 892, and Williamson v. State, 39 Tex. Crim. Rep. 60, in one of which we held a show-case not to be a house, and in the other we held a header box to be not a house. In each case the structure under discussion seems to have been portable and not to have been considered or used as a house. In the Williamson case Judge Davidson says:

"It is true that it had four sides, and was covered over, but it was nevertheless a box, and not a house. All boxes which contain goods, shoes, groceries, etc., for shipment would be houses if this box is held to be one. The evidence excludes the idea of permanency of location or fixedness of place in regard to this house. It was portable, and made for the express purpose of being carried from place to place for the purpose of holding the heads cut from grain, or of grain after it was threshed; and was not used, or intended to be used, in any way or for any purpose connected with a habitation, or other purposes for which houses are ordinarily used. Some of our cases have gone to a considerable extent in holding certain character of structures houses, but in all such it will be found that they were fixtures. See Anderson v. State, 17 Tex. Crim. App. 306; Bigham v. State, 31 Tex. Crim. Rep. 244; Willis v. State, 33 Tex. Crim. Rep. 168. We should not be understood as holding that it is absolutely necessary that the structure, in order to be considered a house, should be fixed to the soil, or that because it is portable it would not be considered a house. But we do hold, under the proof in this case, that this was not a house, but a mere box, constituting a part of the outfit for the thresher.

In Barker v. State, 69 S. W., Rep. 515, we held a corn crib a house, and in Anderson v. State, 17 Tex. Crim. App. 305, an office picketed off the corner of a hardware store was held a house, and in Bigham v. State, 31 Tex. Crim. Rep. 244, we held a sheriff's office and vault which was entered, to be a house. In Douglas v. State, 225 S. W. Rep. 536, we held a space cut off in a store by walls partly of wire and partly of beaver board, to be a house. So in James v. State, 63 Texas Crim. Rep. 559, a large refrigerator used for holding and storing meats was held a house. As far as we are able to see, the cotton pen in question meets every element of a house as prescribed in our statutes and decisions.

We find no fault with the submission of the law applicable to principals. The form of the submission of such doctrine is in line with the recognized charges and we have no doubt of the applicability to the facts.

The contention that the evidence does not support the proposition that appellant was keeping watch or acting together with Moore and Rozier in the alleged burglary, but that if acting with them at all it was merely in the commission of a misdemeanor theft, is without support. If appellant went out with said parties to commit theft and sat in the car and kept watch while they went to a pen and located cotton and came back and told him of its presence and he instructed them to go get it and bring it back and this was done, we would have no doubt of his guilt of burglary. This is the testimony of the witnesses, and if the evidence corroborates them as to appellant's complicity in the theft, we would be constrained to hold that it corroborates them in his complicity in the burglary.

Several bills of exception complain of the refusal of special charges, each of which has been carefully examined by us and in each of which appear erroneous statements of the legal principles to the facts, which fully justified their refusal by the learned trial judge.

We have given to each contention of appellant our careful consideration, and have examined with interest the able brief prepared by his counsel but find ourselves unable to agree with the positions taken, and being satisfied that he has had a fair trial, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In the light of appellant's motion, we have again examined the evidence introduced upon the application for a change of venue. In the opinion of the writer, a showing was made that there did exist in the town of Mt. Vernon and the immediate vicinity thereof such a prejudice against appellant that he could not likely obtain jurors from that neighborhood who would be impartial. It may be this condition was not shown to exist generally over the

county to such an extent as would authorize the conclusion that the court abused his discretion in overruling such application. But the question is close and if such motion is renewed upon another trial the evidence thereon should be carefully weighed.

Closely connected with the question raised by the motion to change the venue is another matter called to our attention in the motion for rehearing which in some way was overlooked in disposing of the case originally. As one ground for a new trial appellant averred that he did not have a fair and impartial jury to try him, in that one Crawley, who served as one of the jurors, was prejudiced against him, and had so expressed himself prior to qualifying as a juror. It is shown that neither appellant nor his counsel knew of such feeling on the juror's part until the trial was practically over, and that the juror's testimony on his voir *dire* examination gave no hint of his unfavorable attitude towards appellant. Upon hearing the motion for new trial the juror, Crawley, admitted that he had sworn upon his *voir dire* examination that he had no prejudice in the case, that he had forced no opinion against appellant on account of this or any other case; that he was not biased in favor of the State, and could give appellant as fair a trial as if he was a stranger, and had no feeling against him at all. Weatherford testified that on one occasion when a number of men were at the cemetery digging a grave a discussion came up about appellant in connection with the result of a former case in which he was tried for transporting liquor, and that Crawley said the jury ought to have given five years instead of suspending his sentence, and that if he (Crawley) had been on the jury he would have sent him to the "pen", and said further that appellant ought to be in the "pen". The witness further testified that on another occasion when appellant came to a certain gin a question arose as to his business there, and some one said, "He (appellant) is a pretty looking fellow to send around to attend to business, and Mr. Crawley said, yes, he is a pretty bad boy, he ought to be in the penitentiary, or something like that." Kennedy testified to the same statements made by Crawley at the cemetery, saying that Crawley remarked it looked like from the way appellant was doing the penitentiary was the place for him. Roper testified that on one occasion witness drove his car into a branch near Crawley's house and sought the latter's aid in getting the car out, that on this occasion Mr. Crawley said, "If he could smell whiskey he would swear we were drunk by getting into a place like that, and said something about if we were like that whiskey-peddling Thurman Davis, he wouldn't help us out. * * * He said Thurman Davis was a whiskey peddling s— of a b—, or something like that, and ought to be in the pen, * * * and said if he had a chance he would send Thurman Davis to the pen for life or break his neck." The juror Crawley testified for the State. On direct examination he said:

"I did not say to Grover Roper that Thurman Davis was a whis-key-peddling s— of a b—; I don't remember having any conver-sation with Roper about Thurman Davis. I never said if I was on his jury and had a chance I would break his neck or send him to the pen."

In regard to the statements claimed to have been made by him at the cemetery, the witness did not deny making them, but only said he remembered no such conversation. The State did not interrogate him about his purported statements at the gin. On cross-examination the juror testified that he remembered the incident of Roper having a car stuck in the mud and said:

"I don't remember Thurman Davis' name being called while I was helping them out of the creek. I wont say it was or was not called by me. I did not say in that conversation that Thurman Davis was a whiskey-peddling s— of a b—, because I don't call people by such names as that. I don't remember saying anything about Thur-man Davis going to the pen. I did not say that if I was on the jury and had a chance I would send him to the pen. I don't know whether I said he ought to be in the pen or not."

The juror would not say that he did or did not have the conversa-tions about appellant at the cemetery and the gin, but would only say he did not remember them, and did not think he used some of the statements there attributed to him. Here we have a juror who on three separate occasions is claimed to have used towards appellant language which reflects a bias or prejudice against him. The juror denies the use on one occasion of an opprobrious epithet towards him, and denies saying if he had an opportunity he would send appellant to the penitentiary, but would not deny that on this occasion he expressed the opinion that appellant should be in the penitentiary. Regarding the remarks at the cemetery positively averred by two wit-nesses to have been made by the juror, and those at the gin positively attributed to him by one witness, he enters only a half-hearted denial by claiming not to remember such conversations. We think this case, by reason of the facts recited, does not fall within the rule that where issue is joined upon such a question and the evidence thereon is in conflict the discretion of the trial judge as reflected in his ruling will not ordinarily be disturbed, but are of opinion the evidence upon the matter shows that the fairness of the jury trying appellant has been impeached by showing the presence thereon of a juror whose state of mind towards appellant was such as to deprive him of that character of trial by a fair and impartial jury contemplated by the law. Without reviewing them, we refer to the following authorities sustaining the views expressed: Haggart v. State,—Tex. Crim. Rep. —, 178 S. W., 328; Harris v. State, — Tex. Crim. Rep. — 161 S. W. 125; Long v. State, 10 Tex. App. R. 199; Hughes v. State, — Tex.

Crim. Rep., — 60 S. W., 562; Adams v. State, 92 Tex. Crim. Rep. 264, 243, S. W., 474.

The motion for rehearing is granted, the judgment of affirmance set aside, and the judgment is now reversed and the cause remanded.

*Reversed and Remanded.*

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Upon the hearing of the motion for new trial there was before the court the affidavits of Weatherford and Ropier. In each of these affidavits there were imputed to the witness Crawley statements made out of court going to show that before he was selected as a juror, he had expressed himself as being prejudiced against the appellant and his case. On the hearing of the motion for new trial, Crawley testified and denied making the statements imputed to him by Ropier, and as to the statement imputed by Weatherford, he said that he did not remember that he had made it. Upon the hearing, Weatherford testified and reiterated his statement in the affidavit. Other witnesses who claimed to have been present on the occasion of the making of the statement in Weatherford's affidavit corroborated his testimony. We have failed to find in the record any testimony discrediting Weatherford or characterizing him as other than a disinterested witness. If Crawley had denied in his testimony that he had made the statement to Weatherford, the conflict of evidence would have been one which was within the discretion of the trial court to decide either way. Crawley's failure to deny it when he had an opportunity to do so, in a manner supports Weatherford's statement. In an inquiry of this kind the law vests in the trial judge the discretion to determine the issues upon which the evidence is conflicting. It is conceived that it may disregard testimony of witnesses who are interested or impeached. Neither is the court bound to accept as true the testimony of a witness which is intrinsically improbable. In fact, it has broad discretion in determining the truth or falsity of an averment in the motion for new trial. We do not understand, however, that the discretion extends so far as to permit the disregard of the testimony of a disinterested and uncontradicted witness unless there is some fact or circumstance upon which such action may be founded.

In the present case, as indicated in the original opinion, the appellant supported his motion for a change of venue, based upon the ground of alleged prejudice, by a very strong array of facts and testimony. The county in which the trial took place and in which the offense was charged to have been committed was a small one, having only some 1200 qualified jurors. Appellant bore a bad reputation, had been accused of other offenses, and in one instance had been found guilty of a felony, the jury according him a suspended sentence. These matters and the present offense had been widely discussed.

Many persons who had been called expressed the opinion that a fair and impartial jury could not be impaneled. Others expressed the contrary opinion. From the testimony on the subject of change of venue found in the record, counsel for the appellant very plausibly argues that the adverse testimony goes only to the extent of an opinion to the effect that it would be possible to impanel a jury of twelve men who were impartial and who would be capable of according the accused a fair trial. The true test, however, is not the possibility that twelve such men might be found but the probability, through the methods provided by law, that such a jury would be impaneled. See Carlisle v. State, 255 S. W. Rep. 991. As stated in the original opinion, the conflict upon this subject is such that based alone upon the matter of the application for a change of venue and the evidence heard thereon, we would not feel warranted in reversing the case. In view of that testimony, however, taken in connection with the fact adduced upon the motion for new trial that one of the jurors who rendered the verdict, had previously made in the most emphatic terms statements showing prejudice against the accused, we are constrained to regard the conclusion reached in reversing the case the proper disposition thereof. The motion for rehearing is therefore overruled.

*Overruled.*