# JUNE 15, 1938

CARL STANLEY ANDERSON v. THE STATE.

No. 19706. Delivered May 4, 1938.
Rehearing denied June 15, 1938.

The opinion states the case.

*Newman & McCollum,* of Brady, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Conviction is for murder; punishment, two years and nine months in the State Penitentiary.

It is charged in the indictment, in substance, that appellant, while under the influence of intoxicating liquor, drove an automobile upon a public highway in McCulloch County and while so engaged he, through mistake or accident, drove said automobile against and upon Delores De La Garza, thereby inflicting injuries upon her from which she died.

The record shows that appellant, accompanied by two Mexicans, drove into the town of Brady about 3 A. M. on the 17th day of September, 1937. He went into the West Texas Sandwich Shop and drank a number of bottles of beer, but the exact amount which he consumed is not made clear. The waitress testified that he was so intoxicated that she refused to sell him any more beer. However, she did let him have two cans to carry with him. Other witnesses testified that he left the cafe about 5 or 6 A. M. in a drunken condition and was staggering at the time.

Manuel De La Garza, one of the occupants of the car which appellant struck, testified that they had stopped their car on the north side of the highway heading west from Brady. That the left rear wheel was about one foot on the pavement; that it was dark and they had the front and rear lights burning on their car. That while he and his father were engaged in fixing a flat, an automobile approached from the rear and collided with their parked car, fatally injuring his mother and two other members of the family. That after the collision appellant, who was driving his car, tried to get away but his motor ceased to function and he got out of the car and staggered around, apparently drunk. He further testified that neither at the time of the collision nor immediately prior thereto did any car approach from the opposite direction from which the appellant came. It seems uncontroverted that the paved part of the highway was 20 feet wide and had, in addition, shoulders about five wide on each side. That the car which belonged to them and which appel-

lant struck was parked parallel with the road so that at least one-half of it was on the shoulder, leaving a space of about seventeen feet of the concrete highway for cars to pass. It also appears from the record that for some distance east of the point of collision, appellant had been driving partly on the shoulder and partly on the concrete of the highway.

Appellant testified that he was not intoxicated at the time of the accident, but admitted that he drank three bottles of beer at the sandwich shop; that earlier in the night, he had tasted some whisky. That the unfortunate occurrence was not due to his drunken condition but to the glaring lights of an oncoming car which blinded him and prevented him from seeing the parked car until he was within about fifteen feet of it. That he put on his brakes but was unable to stop the car and avoid the collision. He offered witnesses who expressed the opinion that he was not drunk at the time in question and proved that he had a good reputation in the community in which he lived as a law-abiding citizen.

Appellant addressed a number of objections to the court's charge for failing to instruct the jury upon certain theories of the law which he deemed applicable to the facts. He requested, among others, the following charge, which the court refused to submit: "You are instructed in this case as a part of the law that it is a violation of the law for any one to park a vehicle, whether attended or unattended, on the pavement or main traveled portion of a highway outside of the corporate limits of a city when it is possible to leave the vehicle off the highway. Now, therefore, if you believe from the evidence that the deceased, or the parties with whom she was traveling had unlawfully parked their car on the pavement or maintraveled portion of the highway and that the parking of such car on such highway was the cause of the collision or contributed thereto, and that such parking was the cause of the death of the deceased, then and in that event, you are instructed to return a verdict of Not Guilty as against the defendant."

Such an instruction as was requested would have required the jury to acquit appellant if they found that the car with which he collided was so parked that it caused or contributed to the accident, notwithstanding appellant was drunk at the time of the collision. We have heretofore held that contributory negligence is not an excuse or justification in cases of this nature. But even if it were, the negligent act of the person who drove and parked the car could not be imputed to the deceased who, it will be noted, had no control over the car. We think

that the court's charge adequately protected appellant's legal rights.

Appellant complains of the action of the trial court in overruling his motion for a new trial based upon the misconduct of the juror, Crawford Winfrey. It was charged in the motion that soon after the unfortunate occurrence and prior to the trial that Winfrey, on one occasion, said to N. E. Hillyard: "The people here raised a lot of hell when some one ran over Clarence Bell and they offered a reward. Carl Stanley Anderson was drunk and ran over and murdered three Mexicans and nothing is being done about it. He ought to be sent to the penitentiary for life."

It was also charged that he said to C. C. Herberg that if he got on the jury to try appellant, he would hang the jury until hell froze over or convict him—give him the full limit.

The State contested the motion and at the hearing thereof, appellant introduced both Hillyard and Herberg who testified to the matters set forth in the motion. The State offered the juror, Winfrey, who testified that at the time he was questioned as a prospective juror, he did not know the appellant. He denied that he told Herberg or anyone else what they charged him with having said. In connection with the denial of the charge, he testified: "I do not remember that I said Carl Stanley Anderson ought to be sent to the penitentiary for life.—I do not remember that I said if I was on the jury that I would send him to the penitentiary for the rest of his life. I don't remember that I ever talked to Hillyard. It is possible we talked about the case. We very likely did."

On cross-examination, he said that it was possible that he had a conversation with Hillyard about it but he did not remember it. It was further shown that on his voir dire, said juror testified that he had no opinion as to the guilt or innocence of the defendant; that he had no prejudice against him and knew of no reason why he would not be a fair and impartial juror.

It was also shown that appellant and his attorneys did not know of the expression of the juror until after the jury had retired to consider their verdict, at which time Hillyard informed appellant's attorney concerning the matter.

This matter presents a perplexing question. Ordinarily the judgment of the trial court on an issue of fact will not be disturbed by this Court unless it is made to appear that the judgment is against the great preponderance of the testimony.

It will be noted that Hillyard and Herberg were positive in their testimony that Winfrey made the statements attributed to him. On the other hand, Winfrey in one breath denied the

statements and in the next breath stated that he did not remember them. If he did not remember whether he made said statements, how could he say that he did not do so? His testimony is so equivocal and uncertain that it is not of sufficient probative force to rebut the direct and positive testimony of Hillyard and Herberg.

Neither appellant or his counsel was negligent in failing to discover the juror's attitude toward the accused. They relied upon his answers to questions on his voir dire touching his knowledge of any fact or his feeling toward appellant which might influence him in his action in finding a verdict.

Section 10 of Article 1 of our Constitution guarantees to one accused of crime a speedy public trial by an impartial jury. The jury in felony cases is composed of twelve men. That means twelve impartial men. Any number less than twelve impartial men would not constitute a jury within the contemplation of the law. In order to fulfill the mandates of the Constitution and to provide an impartial jury, the Legislature enacted Article 616, C. C. P., which authorized the accused to challenge for cause any prospective juror, who either from hearsay or otherwise has reached a conclusion as to the guilt of the accused such as will influence him in his action in finding a verdict, or who entertains a prejudice against him. It is of the utmost importance in the trial of any case that the jury box be kept free from prejudice or any other matters which might tend to improperly influence them.

It is our opinion that under the facts as disclosed by this record, it is extremely doubtful if the appellant had a trial by a jury such as was contemplated by law. In all criminal cases, the defendant is entitled to the benefit of any reasonable doubt.

Under the authorities of Hillyard v. State, 116 Texas Crim. Rep. 567, and Wilson v. State, 79 S. W. (2d) 852, it is our opinion that the trial court erred in overruling the appellant's motion for a new trial.

In view of the disposition we are making of the case, we do not deem it necessary to discuss the other matters complained of by the appellant as they might not arise again on another trial.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—In the motion for rehearing counsel for the State contends that we were in error in holding that one of the jurors was shown to be prejudiced.

N. E. Hillyard testified in part as follows:

"After that time [referring to the accident] I had a conversation with Crawford Winfrey, while drinking coffee at the Central Drugstore. I had the conversation with him the morning after that accident. That was the morning after the 18th of September. * * * He said that when Clarence Bell was run over here in Brady everybody made a big hullaballoo about it, and they did nothing about it. And this boy had killed three Mexicans and that if he was on the jury he would give him the limit. * * * He said that if he was on the jury he would give him the limit, and that those Mexicans were just as good as Clarence Bell."

The juror Winfrey testified in part as follows:

"I did not tell N. E. or 'Fat' Hillyard on the morning that the wreck occurred out yonder on the road, the 17th day of September, that the people here got out and raised a lot of hell when somebody ran over Clarence Bell and a reward was offered. I did not tell him that Carl Stanley Anderson was drunk when this accident occurred. I did not tell him that 'he ran over and murdered these Mexicans and nothing was being done or said.' I did not tell 'Fat' that Anderson was drunk and driving the car recklessly. I did not tell him that Anderson murdered these Mexicans. *I do not remember that I said that Carl Stanley Anderson ought to be sent to the penitentiary for life. I do not remember that I said if I was on the jury that I would send him to the penitentiary for the rest of his life. I do not remember that I ever talked to 'Fat' Hillyard about this in any way or that he mentioned this matter to me. It is possible that we talked about the case. We very likely did.*" (Italics ours.)

The italicized language of the above quotation shows the juror declined to deny that he stated to Hillyard that if he was on the jury he would give appellant "the limit." In King v. State, 94 S. W. (2d) 173, it is shown that a witness on the hearing of the motion for new trial testified that sometime prior to the trial one of the jurors stated to him that King "ought to have the electric chair." When the juror was called to testify he declined to deny that he made the statement and would go no further than to say he did not remember making it. In reversing

the judgment of conviction we cited Davis v. State, 275 S. W. 1029. In that case it was shown by witnesses for the appellant on the hearing of the motion for new trial that a juror had expressed himself as being prejudiced against Davis. The juror testified but declined to deny that he made some of the statements attributed to him. He said, however, he did not remember that he had made such statements. In concluding that a new trial should be granted, this Court, speaking through Judge HAWKINS, used language as follows:

"We think this case, by reason of the facts recited, does not fall within the rule that where issue is joined upon such a question and the evidence thereon is in conflict the discretion of the trial judge as reflected in his ruling will not ordinarily be disturbed, but are of opinion the evidence upon the matter shows that the fairness of the jury trying appellant has been impeached by showing the presence thereon of a juror whose state of mind towards appellant was such as to deprive him of that character of trial by a fair and impartial jury contemplated by the law."

Counsel for the State has attached to his motion for rehearing several ex parte affidavits which have no place in the record and can not be considered by this Court in the disposition of the motion. Looking only to the record as made in the court below, we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.