Raymond **RICONDO**, Appellant,

v.

The STATE of Texas, Appellee.

No. 44289.

Court of Criminal Appeals of Texas.

Dec. 21, 1971.

Rehearing Denied Feb. 16, 1972.

Stewart J. Alexander, San Antonio, (Court appointed on appeal only) for appellant.

Ted Butler, Dist. Atty., Charles T. Conaway, John L. Quinlan, III, and Lucien B. Campbell, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for the offense of murder with the punishment assessed by the jury at 65 years.[1]

The record reflects that there were 25 men in cell block "North-right 3" of the Bexar County Jail on August 9, 1969. Two of these were the appellant and the deceased.

Deputy Sheriff John W. Baeza testified that on the day in question, about 11:15 A.M. as the prisoners filed out of cell block "North-right 3" into the day room for lunch, he noticed one prisoner was missing. Upon investigating, he found a prisoner lying on the floor of his cell, underneath a bunk, with a mattress and towels draped over him. He stated that the prisoner was Michael B. Perkins, the deceased. Only his hand and head were visible. Deputy Baeza testified that he asked Perkins what had happened, and Perkins answered that he had fallen off the bunk. When Deputy Baeza told Perkins that injuries of that type could not have been sustained by falling off of a bunk, Perkins stated that appellant and his friends had beaten him. Deputy Baeza also testified that the deceased's body was "completely black" from bruises.

John Carpenter testified that he was in the jail cell on the day in question and that his bunk was under the one assigned to the deceased. He testified that appellant and two of appellant's friends had severely beaten the deceased. He stated that when the deceased had fallen to the floor, appellant had kicked him about the stomach, ribs, and chest for approximately ten or fifteen minutes.

Manuel Perez testified that he was one of the prisoners in the jail cell on the date involved, and his description of the beating was substantially the same as given by John Carpenter.

Dr. Charles Simpson, a physician, testified that on August 9, 1969, he was the surgeon resident at Robert B. Green Hospital and first saw Perkins "shortly after 12." He stated that his condition was extremely critical and that he died shortly after he was brought to the hospital.

1. Perez v. State, Tex.Cr.App., 466 S.W.2d 283, is a companion case.

Dr. Ruben C. Santos, a pathologist and a forensic pathologist, testified that on August 10, 1969, he did an autopsy upon the body of Michael B. Perkins, the deceased. He stated that Perkins had been "beaten to death" and "it could have been a fist, a kick, a stomping or a blunt instrument." He stated the autopsy revealed 14 fractured ribs, "his face was bruised; both eyes were black. He had scratches over the nose, chin, neck; bruises on the back of the neck; and the anterior above the thorax, by the front of the chest. He had linear scratches over both buttocks, back; and multiple bruises of the extremities.—He had cuts inside his mouth." He stated that the chest cavities were partially filled with blood "a little more than a pint in the left side and about almost two pints in the right side. And also in the abdomen was about a similar amount of blood—there was a large tear in the liver."

First, appellant contends "That the Honorable Trial Court erred in admitting the testimony of John W. Baeza, into the evidence of record, as regarding the statement of the deceased, Michael B. Perkins, to the effect that 'Raymond Ricondo and Ramon Perez, and their friends beat me.' "

The court conducted a hearing outside the presence of the jury to determine the admissibility of this statement and at such hearing we note the following:

"A. (By Deputy Sheriff Baeza) After I removed the mattress and the towels, I reached in and got him by the arm.

"Q. (By the Prosecutor) What did he do?

"A. He hollered, said it hurt; and I asked him what had happened. He said he had fell off the bunk.

"Q. All right.

"A. And I asked him again, or he opened his eyes.

"Q. Whenever he said 'I fell off the bunk,' were his eyes opened or closed?

"A. Well, he still had his head turned; I mean, he was underneath the bunk.

.    .    .    .    .    .

"Q. Whenever he said he fell off the bunk, was he looking at you?

"A. No, sir, he was not.

"Q. Did he have his eyes opened or closed, or could you see?

"A. I don't remember whether he had his eyes opened or closed—Well, he didn't have his face turned; he wasn't looking right at me then, no.

"Q. Now, then, after he said he fell off the bunk, what did you say to him?

"A. I told him he didn't fall off the bunk and do this; and then he opened his eyes.

"Q. Was he looking at you when he opened his eyes?

"A. Yes. He said, 'Baeza, you are a white man.' And I asked him again what happened to him. And he said, 'Ramon Ricondo and Ramon Perez and their friends beat me.' "

The record reflects that the deceased Perkins was beaten on August 8, 1969, by the appellant and his friends. Shortly after breakfast on August 9 the beatings were resumed and continued until just minutes before Deputy Baeza found the injured Perkins, the total time for these beatings being approximately two and one-half hours. When the lunch call was given by the guards Perkins was unable to stand and was again beaten for "faking." Thereafter the appellant and others hid the deceased under towels and a mattress as they left the cell block for lunch.

Within three or four minutes after the prisoners left the cell block Baeza had the foregoing conversation with Perkins, it not

appearing that badly injured Perkins knew at first that he was talking to a guard. Only after he opened his eyes did he make the complained of statement. When Baeza pulled Perkins up against the wall, attempting to help him, blood ran out Perkins' ears. He was dead within the hour.

■ We conclude that under the circumstances presented, the deceased's physical condition, his apparent extreme physical suffering at the time the statement was made shortly after the last beating, the response being made immediately after the deceased realized to whom he was talking, render the statement admissible as a res gestae statement, an exception to the hearsay rule. Goad v. State, Tex.Cr.App., 464 S.W.2d 129; James v. State, 170 Tex.Cr.R. 402, 341 S.W.2d 436; Autry v. State, 143 Tex. Cr.R. 252, 157 S.W.2d 924; Freeman v. State, 91 Tex.Cr.R. 410, 239 S.W. 969. The fact that the statement was made in response to non-leading questions does not under these circumstances call for a different conclusion. Goad v. State, supra. This clearly appears to be a statement where the event is speaking through the person rather than the person speaking about the event. See Oldham v. State, 167 Tex.Cr.R. 644, 322 S.W.2d 616.

Ground of error number one is overruled.

■ Ground of error number two is "That the testimony remarks by Counsel and remarks by the Court were not taken down verbatim by the Court Reporter and therefore, the appellant was deprived of a complete record for his appeal, Griffin v. Illinois, 351 U.S. 12, 100 L.Ed. 891, 76 S.Ct. 585."

This ground of error is not briefed and does not satisfy Article 40.09, Sec. 9, Vernon's Ann.C.C.P.

■ Ground of error number three complains of the following argument of the prosecuting attorney in his final argument:

"I am suggesting to you, under the facts in this case, it calls for not less than 99 year sentence for the reason that, under our laws and under our system, anything less will not rehabilitate Raymond Ricondo; and I hope you understand me."

We note that no objection was made until after the argument was concluded and the jury had withdrawn to deliberate. Such an objection comes too late to preserve error. Bryant v. State, Tex.Cr.App., 455 S.W.2d 235; Van Bibber v. State, Tex.Cr. App., 371 S.W.2d 880; Meador v. State, 151 Tex.Cr.R. 53, 204 S.W.2d 628.

■ Finally, by supplemental brief, appellant brings his fourth ground of error and complains that the "trial court erred in sending the jury into the court's chambers to complete the punishment portion of their verdict, where the jury had access to written materials not introduced into evidence."

The record reflects that the court, after bringing the jury in to receive the verdict, noted that such verdict was incomplete and directed them to retire to complete the same. There is no showing that appellant objected to any such procedure of the court. This ground of error was not raised in the trial court. No reason is shown to review the same "in the interest of justice." See Article 40.09, Secs. 9 and 13, V.A.C.C.P.

The judgment is affirmed.