Affirmed and Opinion filed October 12, 2004









Affirmed and Opinion filed October 12, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00908-CR

NO. 14-03-00909-CR

____________

 

ASAD WALI KESARIA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
Judicial District Court

Harris County, Texas

Trial Court Cause Nos. 946,507
& 955,154 

 



 

OP I N I O N








Appellant Asad Wali Kesaria was convicted
by a jury in a single trial of two felony offenses: (1) burglary of a
habitation with intent to commit theft; and (2) burglary of a habitation with intent
to commit injury to a child.  The jury
assessed punishment in each cause at ten years= confinement,
probated for ten years, and a $10,000,00 fine. 
As a condition of appellant=s probation, the
court ordered appellant to serve 180 days in the Harris County Jail for each
conviction and required those periods to run consecutively.  Asserting five points of error in two
separate briefs, appellant contends: (1) he was denied effective assistance of
counsel; (2) the evidence was factually insufficient to sustain the conviction;
(3) the trial court erred by excluding an excited utterance; (4) the exclusion
of the excited utterance deprived him of due process and the right to present a
defense; and (5) the trial court erred in stacking the jail time for each
offense.  Because all dispositive issues
are clearly settled in law, we issue this memorandum opinion.  See Tex.
R. App. P. 47.4.  We affirm.   

Background

On March 18, 2003, at approximately 10:30
p.m., twenty-nine year old Dr. Simeen Jhaver and her thirteen-year old brother
Muhamadali, were alone in their home watching television in the living room
when they heard the rustling of window blinds in the adjoining master bedroom.  Simeen walked into that bedroom and observed
one man inside and another coming through the window, both wearing stocking
masks and gloves. 

Simeen attempted to run out of the room
and was pushed down by one of the men. 
Muhamadali hit one of the burglars and was subsequently punched in the
face suffering an injury to his nose. 
Using duct tape, the men tied Simeen and Muhamadali=s hands together
and covered their eyes by wrapping their heads with the tape. 

Simeen and Muhamadali testified the
intruders were inside their home approximately twenty to thirty minutes.  They testified that during that time,
appellant remained with them, got Muhamadali a towel to stop his bleeding nose,
and talked while his accomplice went throughout the house taking money and
jewelry.  Simeen testified she could see
appellant through slits in the duct tape, and because her hands were tied in
front of her, she was able to adjust the tape. 
She recognized appellant by physique, height, structure of his face, and
voice.  Muhamadali testified that he was
able to see appellant before his eyes were taped, and while taped, when he was
lying down.  Both Simeen and Muhamadali
testified that they were familiar with appellant because they attended the same
mosque and, on several occasions, appellant had been a guest in their house.








However, three witnesses testified
appellant could not have committed the crimes at the time alleged because he
was with them at a birthday party. 
Appellant=s first alibi witness, his sister-in-law,
stated appellant came to her house before nightfall with a friend to celebrate
her son=s eighth birthday
and did not leave until midnight.  Appellant=s second witness,
his fifteen-year-old niece and daughter of his sister-in-law, similarly
testified that appellant came to the house around 8:30 p.m. and was still there
when she went to sleep at 11:30 that evening. 
Appellant=s third witness, a seventeen-year-old
friend of appellant, testified that he accompanied appellant to the birthday
party at 8:30 P.M. and that they did not leave until midnight.                               

Ineffective Assistance of Counsel 

In his first issue, appellant asserts he
was denied effective assistance of counsel because his attorney failed to
object to harmful hearsay and double hearsay. 
Specifically, on direct examination of Detective Brown, Brown testified
that he had been informed appellant was involved.  Brown stated that he got the information from
the reporting deputy=s report and the information on the report
was taken from statements made by one of the witnesses and Altaf Kesaria,
appellant=s brother. 
Later, during closing arguments, the prosecutor repeated the
information.  








The United States Supreme Court has
established a two-prong test to determine whether counsel was ineffective.  Strickland v. Washington, 466 U.S. 668,
687 (1984).  Appellant must prove (1) his
trial counsel=s representation was deficient and (2) his
trial counsel=s deficient performance was so serious
that it prejudiced his defense.  Id.
at 686-87; Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002).  To establish deficient
performance, appellant must prove by a preponderance of the evidence that
counsel=s representation
fell below the objective standard of prevailing professional norms, and there
is a reasonable probability that, but for counsel=s deficiency, the result
of the proceeding would have been different. 
Id.  Appellant must
identify specific acts or omissions of counsel that constitute the alleged
ineffective assistance and affirmatively prove that they fell below the
professional norm for reasonableness.  McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996) overruled on other grounds by, Mosley v. State,
983 S.W.2d 249, 263 (Tex. Crim. App. 1998) (citing Strickland, 466 U.S.
at 690).  The alleged ineffectiveness
must be firmly founded in the record.  Bone,
77 S.W.3d at 835.  If appellant fails to
satisfy either prong of the test, we do not need to consider the remaining
prong.  Strickland, 466 U.S. at
687. 

Judicial scrutiny of counsel=s performance must
be highly deferential, and we indulge a strong presumption that counsel was
effective.  Id at 689; Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  We presume counsel=s actions were
reasonably professional and motivated by sound trial strategy.  Strickland, 466 U.S. at 689 (stating that
a fair assessment of attorney performance requires every effort to eliminate
the distorting effects of hindsight  and
to evaluate the conduct from counsel=s perspective at
the time of trial).  Appellant must
overcome this presumption by illustrating why trial counsel did what he did.  Belcher v. State, 93 S.W.3d 593, 595 (Tex.
App.CHouston [14th
Dist.] 2002, pet. dism=d). When evaluating an allegation of
ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  The fact that another
attorney may have acted in a different manner will not be sufficient to prove
ineffective assistance, and an error in trial strategy will be considered
inadequate only if counsel=s actions lack any
plausible basis.  Dickerson v. State,
87 S.W.3d 632, 637 (Tex. App.CSan Antonio 2002,
no pet.).  








Generally, the record on direct appeal is
not sufficient to establish a claim of ineffective assistance of counsel
because a silent record cannot rebut the presumption that counsel=s performance was
based on sound or reasonable trial strategy.  Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002).  A reviewing
court should not second guess trial counsel=s strategy in
hindsight; thus, an affidavit supporting a motion for new trial can be critical
to the success of a claim for ineffective assistance.  Storr v. State, 126 S.W.3d 647, 651 (Tex.
App.CHouston [14th
Dist.] 2004, no pet.); Stults v. State, 23 S.W.3d 198, 208-09 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 
In the absence of a record explaining trial counsel=s actions, a
reviewing court most likely cannot conclude trial counsel=s performance fell
below an objective standard of reasonableness unless the conduct was so
outrageous that no competent attorney would have engaged in it.[1]  Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001); Storr, 126 S.W.3d at 650-51.      

Appellant filed a motion for a new trial
asserting A[t]he verdict in the cause is contrary to the
law and the evidence.@ 
The motion was subsequently denied. 
Nonetheless, the record contains no evidence of the reasoning behind his
trial counsel=s actions in failing to object to the
hearsay statement.  Therefore, we cannot
conclude that counsel=s performance was deficient.  See Jackson, 877 S.W.2d at 771-72; see
also Thompson, 9 S.W.3d at 814 (holding that when the record provides no
explanation as to the motivation behind trial counsel=s actions, an
appellate court should be hesitant to declare ineffective assistance of
counsel).  The appellate court is not
required to speculate on the reasons behind trial counsel=s actions when
confronted with a silent record.  Jackson, 877 S.W.2d at 771.  Appellant 
fails to provide this court with any evidence rebutting the presumption
that counsel was providing effective assistance.  Thus, appellant has not satisfied his burden
on appeal to rebut the presumption that counsel=s actions were
reasonably professional and motivated by sound trial strategy. Because appellant
produced no evidence concerning trial counsel=s reasons for
choosing the course he did, his first issue is overruled. 

Factual Sufficiency








In his second issue, appellant contends
the evidence is factually insufficient to support his conviction.  Appellant argues the testimony of the two
eyewitnesses who identified him as the culprit were inconsistent and
implausible.  Because appellant does not
challenge the legal sufficiency of the evidence, our review of the factual
sufficiency of the evidence begins with the presumption that the evidence
supporting the judgement was legally sufficient.  See Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1996).      

In conducting a factual sufficiency review,
we view all the evidence in a neutral light, without favoring either party.  Johnson v. State, 23 S.W.3d 1, 6-7 (Tex.
Crim. App. 2000).  We will set aside the
verdict only if: (1) the evidence supporting the verdict, considered by itself,
is too weak to support the finding of guilt beyond a reasonable doubt, or (2)
contrary evidence, if present, is strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Zuniga v. State, No. 329-02, 2004 WL
840786, at *7 (Tex. Crim. App. Apr. 21, 2004); Roy v. State, Nos.
14-02-00909-CR, 14-02-00910-CR, 2004 WL 1607489, at *4 (Tex. App.CHouston [14th
Dist.] July 20, 2004, no pet. h.).  When
reviewing the evidence, we must give appropriate deference to the jury findings
in order to avoid intruding on the fact finder=s role as the sole
judge of the weight and credibility of the evidence.  Johnson, 23 S.W.3d at 7.  Therefore, unless the record reveals a
different result is appropriate, we Amust defer to the
jury=s determination
considering what weight to give contradictory testimonial evidence, because
resolution often turns on evaluation of credibility and demeanor.@  Id. at 8.

The issue in this case turns on
identity.  Appellant argues the testimony
of the two eyewitnesses, Simeen and Muhamadali Jhaver, was inconsistent and
implausible and directs us to the testimony from the three alibi witnesses[2]
that they were with appellant at a birthday party at the time of the burglary. 








Appellant argues that Simeen=s testimony is
internally inconsistent.  Simeen
testified she told either Officer Thorton or Detective Brown that she could
identify one of the intruders.  However,
Detective Brown testified that Simeen told him she could possibly recognize one
of the intruders.  The initial incident
report, taken by Officer Thornton, states that Simeen gave the name Parvez
Merchant as a possible suspect, but said nothing about appellant.  Similarly, Simeen=s statement to
Detective Brown on March 21, 2003, does not include appellant=s name.

Appellant also argues Muhamadali=s testimony is
internally inconsistent. Appellant points to Muhamadali=s testimony that
he could see 50% of the perpetrators= faces through the
pantyhose masks and that it was enough to determine 100% who they were.  Appellant claims the record reflects an
inconsistency in Muhamadali=s testimony
concerning exactly when he was able to identify appellant during the
intrusion.  However, the record does not
clearly establish when Muhamadali first recognized appellant.  The record merely states that Muhamadali was
able to see at least some of the perpetrators= faces even though
they were covered with pantyhose and that he was able to recognize appellant at
some point during the intrusion.  

Appellant also questions Muhamadali=s credibility in
making his identification because he never mentioned appellant as an intruder to
any law enforcement officials on the night of the incident or when he gave his
statement to the detective on March 27, 
2003.  However, Detective Brown
testified he did not interview Muhamadali the night of the incident because
Muhamadali was injured.  Muhamadali
testified that on the night of the incident, he did not tell the police he
could identify one of the burglars because he left that to his sister, and he
did not put it in his statement to the detective because he was just asked to
tell what happened, not to give his opinion.








Appellant also contends that the
identification by Simeen and Muhamadali is implausible because the intruders
covered the victims= eyes with duct tape, wore pantyhose over
their heads, and punched Muhamadali in the face destroying his glasses.  However, despite appellant=s contentions,
Simeen and Muhamadali: (1) unequivocally identified appellant as the man who
burglarized their home; (2) observed the intruders in their home for a period
of time while the lights were on and before tape was placed over their
eyes.  Both eyewitnesses testified they
could see through the tape;[3]
they heard appellant speak and recognized his voice; appellant stood by them
during the burglary and retrieved a towel for Muhamadali to stop his nose from
bleeding; and both witnesses testified that they were familiar with appellant
because they had seen and met him on several occasions inside their house and
at their place of worship. 

Positive identification of a defendant by
the victim of a robbery is to be given great weight.  Haywood v. State, 507 S.W.2d 757, 758
(Tex. Crim. App. 1974); Jones v. State, 687 S.W.2d 430, 432 (Tex. App.CHouston [14th
Dist.] 1985, no pet.); see also Davis v. State, 831 S.W.2d 839, 842
(Tex. App.CDallas 1992, pet. ref=d) (holding that
positive identification by victim was sufficient to sustain conviction, even
though defendant offered five alibi witnesses that he was in another state at
the time of the crime).  Our evaluation
should not intrude upon the fact-finder=s role as the sole
judge of the weight and credibility of the evidence.  Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).  Moreover, A[a] decision is
not manifestly unjust merely because the jury resolved conflicting views of the
evidence in favor of the State.@  Id. 
After considering the evidence in a neutral light, we conclude that the
evidence is not too weak to support the finding of guilt beyond a reasonable
doubt, and that contrary evidence was not strong enough to conclude the
reasonable doubt standard could not be met. 
Therefore, appellant=s second issue is
overruled.

Hearsay








In his third and fourth issues, appellant
asserts the trial court erred by excluding an excited utterance of the
complainant=s wife[4]
and that this error deprived him of due process and the right to present a
defense.  Specifically, appellant
challenges the trial court=s refusal to allow
appellant=s brother to testify about a statement
made by the complainants=s wife. 
The relevant testimony is as follows:

Defense Attorney: 
He=s (Altaf, brother of appellant)
going to testify that he was with them (mother and father of Simeen and
Muhamadali) and that the mother said an excited utterance, and I=m going to try and get it in, oh,
God spoke to me, I know it was Wali, Norma and Asad that committed this
crime.  She said that right after she
found out.

Court: What possible probative value
does that have?

Defense Attorney: The fact that she said that and
the daughter and the son got the idea from naming Asad when she said B they told the detective and told
that officer that night it was clearly Asad, which is not true. 

Court: I=m not going to let it in. 

Defense Attorney: Not going to let it in?

Court: No, sir. 

       

The admissibility of an out-of-court
statement under the exceptions to the general hearsay exclusion rule is within
the trial court=s discretion.  Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003) (citing Lawton v. State, 913 S.W.2d 542, 553
(Tex. Crim. App. 1995)).  Therefore, a
reviewing court should not reverse unless a clear abuse of discretion is
shown.  Zuliani, 97 S.W.3d at
595.  An abuse of discretion occurs Aonly when the
trial judge=s decision was so clearly wrong as to lie
outside that zone within which reasonable persons might disagree.@  Id. (quoting Cantu v. State, 842
S.W.2d 667, 682 (Tex. Crim. App. 1992)).

Hearsay is a statement, other than one
made by the declarant while testifying at trial, offered in evidence to prove
the truth of the matter asserted.  Tex. R. Evid. 801(d).  For hearsay to be admissible, it must fit
into an exception provided by a statute or the Rules of Evidence.  Tex.
R. Evid. 802.  An excited
utterance under Texas Rule of Evidence 803(2) is one such exception.








An excited utterance is Aa statement
relating to a startling event or condition made while the declarant was under
the stress of excitement caused by the event or condition.@  Tex.
R. Evid. 803(2); Salazar v. State, 38 S.W.3d 141, 154 (Tex. Crim.
App. 2001), cert. denied, 534 U.S. 122 (2001).  For the excited-utterance exception to apply,
three requirements must be shown: (1) the statement must be the product of a
startling occurrence that produces a state of nervous excitement in the
declarant and renders the utterance spontaneous; (2) the state of excitement
must still so dominate the declarant=s mind that there
is no time or opportunity to contrive or misrepresent; and (3) the statement
must relate to the circumstances of the occurrence preceding it.  Jackson v. State, 110 S.W.3d 626, 633
(Tex. App.CHouston [14th Dist.] 2003, pet. ref=d); see also
McFarland, 845 S.W.2d at 846.

In determining whether a statement is an
excited utterance, the Apivotal inquiry is >whether the
declarant was still dominated by the emotions, excitement, fear, or pain of the
event.=@  King v. State, 953 S.W.2d 266, 269 (Tex.
Crim. App. 1997) (quoting McFarland, 845 S.W.2d at 846) ; Drew v.
State, 76 S.W.3d 436, 457-58 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d), cert. denied, 537 U.S. 1047
(2002); see Ricondo v. State, 475 S.W.2d 793, 796 (Tex. Crim. App. 1971)
(stating that the statement is deemed trustworthy because it represents an event
speaking through the person rather than the person speaking about the
event).  To determine whether a hearsay
statement is admissible as an excited utterance, the court may consider such
factors as time elapsed and whether the statement was in response to a
question.  Salazar, 38 S.W.3d at
154.  However, these factors are not
dispositive.  See Lawton, 913
S.W.2d at 553.   

At trial in the instant case, there was no
showing by appellant that the declarant=s statement, if
made, was made while she was excited or in the grip of a shocking event.  When appellant sought admission of the
hearsay testimony, appellant failed to establish the testimony was a statement
relating to a startling event or condition while the declarant was under the
stress of excitement caused by the event or condition.  Similarly, the record does not reveal where
she allegedly made the statement, or who was in her presence when the statement
was made.  Therefore, we hold that the
out-of-court statement was not an excited 

 








utterance and it was not error for the trial court to
exclude this hearsay evidence.  We
overrule appellant=s third issue. 

In his fourth issue, appellant argues the
trial court erred by not admitting the complainant=s wife=s statement
because the exclusion of the statement violated the Due Process Clause of the
Fourteenth Amendment by preventing him from presenting a defense.  Because appellant did not raise his due
process argument at trial, he has failed to preserve this point of error for
our review.  See Wright v. State,
28 S.W.3d 526, 536 (Tex. Crim. App. 2000), cert. denied, 531 U.S. 1128
(2001) (holding where appellant objected to hearsay but not under the
Confrontation Clause, appellant waived the constitutional argument on appeal); Briggs
v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (stating that even
constitutional error may be waived); Castillo v. State, 79 S.W.3d  817, 827 (Tex. App.CDallas 2002, pet.
ref=d), cert.
denied, 538 U.S. 924 (2003) (holding that appellant waived due process
argument on appeal by not objecting to the failure of the court reporter to
record the punishment hearing); see also Tex. R. App. P. 33.1(a).   


Even if appellant had preserved this point
of error, his due process argument is without merit.  Appellant cites Potier v. State, 68 S.W.3d
657 (Tex. Crim. App. 2002), to support his contention that his due process
rights were violated.  In Potier,
the trial court erroneously excluded evidence due to a misinterpretation of the
hearsay rule.  Id. at 666.  The Court of Criminal Appeals held the
exclusion did not rise to the level of constitutional error.  Id. 
The court further held Athat the exclusion
of a defendant=s evidence will be constitutional error
only if the evidence forms such a vital portion of the case that exclusion
effectively precludes the defendant from presenting a defense.@  Id. at 665.








In the present case, as we concluded
above, the excluded evidence does not fall under the excited utterance
exception to the hearsay rule and does not bear persuasive assurances of
trustworthiness; thus, appellant=s reliance on Potier
is misplaced.  Moreover, exclusion of
the statement did not prevent appellant from presenting Aa defense.@  See id. at 666 (stating that the erroneously
excluded evidence may have been relevant to self-defense, but exclusion did not
prevent appellant from presenting a defense). 
At trial, appellant=s counsel argued
the State failed to prove its case beyond a reasonable doubt, stating he had Anever seen a case
so full of reasonable doubt@ in his life.  Appellant=s defense also
included an alibi with three witnesses stating that he was at a party.  Because appellant was able to present Aa defense,@ we conclude
appellant=s due process rights were not
violated.  See. id.  For this additional reason, we overrule
appellant=s fourth issue. 

Stacking of Confinement Periods 

In his fifth issue, appellant argues the
trial court erred in stacking the jail time of both of his cases.  The jury assessed appellant=s punishment at
ten years= confinement in each case and recommended
community supervision.  However, as a
condition of appellant=s probation, the trial judge ordered
appellant to serve 180 days in the Harris County Jail in each case, with the
periods of confinement to run consecutively. 
Appellant did not object to the conditions at trial, but complains about
them for the first time on direct appeal.

The trial court=s authority under
Texas Code of Criminal Procedure article 42.08 to order consecutive sentences
is statutorily limited by Texas Penal Code Section 3.03.  See LaPorte v. State, 840 S.W.2d  412, 415 (Tex. Crim. App. 1992); see also Tex. Code Crim. Proc. Ann. Art.
42.08(a) (Vernon 2004).  When the accused
is found guilty of more than one offense arising out of the same criminal
episode prosecuted in a single criminal action, a sentence for each
offense for which the accused has been found guilty shall be pronounced and
such sentence shall run concurrently.  See Tex.
Pen. Code Ann. ' 3.03(a) (Vernon 2004).  While there are exceptions to the rule in
3.03(a), ' 3.03 does not authorize stacking of
sentences for offenses involving burglary of a habitation.  See Tex.
Pen. Code Ann. ' 3.03(b) (Vernon 2004).    








But, community supervision is not part of
the sentence.  Speth v. State, 6
S.W.3d 530, 532 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1088
(2000).  Rather, community supervision is
the suspension of the sentence received by the defendant at trial.  Tex.
Code Crim. Proc. Ann. Art. 42.12 ' 2(2) (Vernon
2004).  The trial court=s Agranting of
community supervision is a privilege, not a right.@  Speth, 6 S.W.3d at 533 (citing Flores
v. State, 904 S.W.2d 129, 130 (Tex. Crim. App. 1995) (plurality opinion)
(there is no fundamental right to receive probation; it is within the
discretion of the trial court to determine whether an individual defendant is
entitled to probation), cert. denied, 516 U.S. 1050 (1996).  Probation can be viewed as a contract between
the court and a defendant, in which the court agrees to grant a sort of
clemency by way of probation if the defendant will perform certain requirements
and conditions.  Speth, 6 S.W.3d
at 533 (citing Wilson v. State, 240 S.W.2d 774, 775 (Tex. Crim. App.
1951)).  The judge has broad discretion
in determining reasonable conditions of the community supervision that are Adesigned to
protect or restore the community, protect or restore the victim, or punish,
rehabilitate, or reform the defendant.@  Tex.
Code Crim. Proc. Ann. Art. 42.12 ' 11(a) (Vernon
2004).  In the instant case, the
judgement and the conditions of community supervision state that confinement is
180 days for each offense, to run consecutively, and upon completion of 360
days= confinement, to
report to boot camp.[5]
 

Appellant failed to object to probation
conditions requiring him to remain incarcerated for two consecutive periods of
180 days.  In order to preserve error, a
defendant must make a timely and specific objection.  Tex. R. App. P. 33.1(a)(1)(A);
Rickels v. State, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003).  Nothing in the record reflects appellant made
such an objection.  Because community
supervision is a privilege, not a right, and the conditions are agreed to by
the court and the defendant, conditions not objected to are affirmatively
accepted and any rights encroached upon by those terms are waived.  Speth, 6 S.W.3d at 534.  Therefore, appellant has not preserved the
error, and has waived his objection.  We
overrule appellant=s fifth issue. 

 








We affirm the judgement of the trial
court.       

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Opinion filed October 12, 2004.

Panel
consists of Justices Anderson, Hudson, and Frost.

Publish
C Tex. R. App. P. 47.2(b).

 

 











[1]  Appellant
cites Ramirez v. State, which held that defendant=s counsel was ineffective, even without evidence in
the record explaining trial counsel=s
actions, for failure to object to a statement at trial.  987 S.W.2d 938, 944-45 (Tex. App.CAustin 1999, pet. ref=d).  We are not bound by that decision.  Moreover, this case is distinguishable on its
facts.  In Ramirez, the statement
that counsel failed to object to was the only evidence in the record supporting
the defendant=s conviction for aggravated sexual assault.  Id. 
Here, the un-objected to testimony was not the only evidence in the
record supporting a conviction.         





[2]  Appellant=s three witnesses included his sister-in-law, niece,
and friend. 





[3]  Simeen
testified that she was able to see appellant through slits in the tape and
because her hands were taped in front of her, she was able to adjust the tape
around her eyes.  Muhamadali testified
that despite the tape over his eyes, he was able to see when he was lying down
because the tape was not flat over the eyes. 






[4]  The
complainant  is Medhi Jhaver, the father
of Simeen and Muhamadali. There is no evidence in the record of the name of
Medhi=s wife. 





[5]  See Tex. Code Crim. Proc. Ann. Art.
42.12(a) (Vernon 2004) (stating that as a condition of community supervision in
a felony case, a judge may require confinement up to 180 days).