# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00100-CR
NO. 03-05-00101-CR

**Elias Villarreal, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NOS. 05-904001 & 05-904002, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Elias Villarreal was convicted of two counts of felony assault–family violence. *See* Tex. Pen. Code Ann. § 22.01(a)(1), (b)(2) (West Supp. 2005). In three issues on appeal, Villarreal contends that: (1) the district court erroneously admitted hearsay statements in violation of the Confrontation Clause; (2) the district court erred in permitting the State to call the complainants to testify for the purpose of "eliciting otherwise inadmissible impeachment testimony"; and (3) his punishment of 28 years' confinement was cruel and unusual. We will affirm the judgment of the district court.

## BACKGROUND

Villarreal lived in an apartment with his wife, Maria, his stepdaughter, Andrea Martinez, and Andrea's husband, Alberto.[1] The jury heard evidence that Officer Michael Tibuna of the Austin Police Department responded to a 911 call reporting family violence at the apartment. It is undisputed that Alberto placed the call to 911.

Officer Tibuna testified that Andrea met him at the front door of the apartment. The district court permitted the State, over Villarreal's hearsay and Confrontation Clause objections, to elicit testimony from Tibuna concerning Andrea's statements to him. Tibuna testified that Andrea was "calm" as he questioned her in the living room but that he heard someone "crying very loudly" in one of the bedrooms. Villarreal, Tibuna recounted, then entered the living room. Tibuna detained Villarreal and waited for backup. Once a backup officer arrived, Officer Tibuna went into the bedroom to investigate the crying sounds.

Tibuna testified that he found Maria on the bed "crying hysterically" and that she was not immediately able to respond to his questions. Tibuna testified that Maria appeared to be under the stress of some exciting event that, in his opinion, had occurred recently, probably "within a few minutes." The State then asked Tibuna if he asked Maria what had happened to her. Villarreal again raised a Confrontation Clause objection to the admission of statements made to Tibuna. The district court overruled the objection. Tibuna then testified that Maria told him that "nothing had happened" but that she was still crying hysterically. Tibuna then testified that Andrea entered the bedroom and

---

[1] For the sake of clarity, throughout the opinion we will refer to the three individuals living in the apartment with Villarreal by their first names.

2

spoke with her mother. When asked what Andrea's demeanor was at this point, Tibuna testified that "Andrea at first was calm." Tibuna also recounted that Andrea was telling Maria "to tell the truth." Villarreal objected that no predicate had been laid for the admission of anything said by Andrea as an excited utterance because Tibuna had testified that she had been calm. The district court then allowed the State to lay a predicate for admitting the statements as excited utterances:

> Q: Okay. And she came in the room and she began to speak to her mother?
>
> A: Correct.
>
> Q: Okay. And when she is in the room with her mother, her mother is crying, correct?
>
> A: Correct.
>
> Q: And does Andrea's demeanor begin to change?
>
> A: Yes, it did.
>
> Q: In what way does it change?
>
> A: She began to cry to as well.
>
> Q: And did she appear to be upset about the situation?
>
> A: Yes, she was.
>
> Q: And did she appear at this point to be under the stress and the excitement of the situation, and the situation being that this occurred a few minutes prior to your arrival?
>
> A: Yes.
>
> Q: And at this point she is talking to her mother, she is crying, and her mother is crying, correct?
>
> A: Correct.

3

. . . .

> Q: Okay. And once Andrea begins to cry and is talking to her mother, what does she say to her mother?

At this point Villarreal renewed his objection, which the district court overruled. Tibuna testified that Andrea "told her mother to tell the truth about what had happened." Tibuna also testified, without objection from Villarreal, that Maria told him that Villarreal had slapped her. Tibuna testified that he had observed redness on the left side of Maria's upper cheek. The State then asked Tibuna about what Andrea told him about the incident, and Tibuna testified, without further objection from Villarreal:

> [Andrea] stated that [Maria] was in the living room with Elias Villarreal, and that Elias had told her, [Maria], that he had another girlfriend, and that at the time [Maria], in her I guess being upset and feeling hurt, told him that she also had another boyfriend, and that this angered Mr. Villarreal, and that Andrea ran up to him in order to stop the assault, grabbed him by the shirt, and told him to quit hitting her mother. . . . [Andrea] stated that Mr. Villarreal grabbed her by the neck and started pressing hard, and she was having trouble breathing, and that she told him to let her go, and that he continued squeezing. She continued having difficulty breathing, and in an attempt to free herself, scratched his face and his left arm. . . . [Andrea] stated that after she scratched Mr. Villarreal, to free herself from him grabbing her by the neck, she yelled at [Alberto], who was in one of the other bedrooms, to call 911.

Tibuna further testified that Andrea had a "red abrasion consistent with being grabbed by the neck" on the side of her neck and that Andrea had indicated that the abrasion had caused her pain.

Tibuna also testified that when he asked Villarreal for an explanation of what had happened, Villarreal "stated that Andrea had attacked him, and that he just took the assault and did not do anything back, did not hit her or do nothing back to her." But Tibuna recounted that

4

Villarreal was unable to provide an explanation for Maria and Andrea's bruises. Tibuna testified that, after hearing the statements of Maria, Andrea, and Villarreal, he decided to arrest Villarreal.

Maria and Andrea later signed an affidavit of non-prosecution. The State subpoenaed them to testify at trial. At trial, Maria denied that Villarreal hit her and claimed that she did not recall telling Tibuna that Villarreal had slapped her. Maria also testified that Andrea attacked Villarreal and that Andrea got the mark on her neck because "maybe he was defending himself." On cross-examination, Maria testified that Villarreal had never hit her, threatened her, or assaulted her.

Andrea testified that she asked Alberto to call the police because she had heard Villarreal and Maria arguing. Andrea testified, however, that she "didn't see anything." Andrea explained that when the police arrived,

> I was crying because I was very upset. And I told them that he had hit me, but he had — didn't hit me, because I was very upset, very mad. And I was so upset that I wanted him, you know, to go. You know, I wanted them to take him out. And he was not doing anything. And I told the police that he had hit my mom, and he didn't.

On cross-examination, Andrea testified that she did not see Villarreal hit Maria, and that he did not seize her by the neck. Andrea testified that when Villarreal and Maria were arguing, she attacked Villarreal.

The jury found Villarreal guilty of assaulting both Maria and Andrea. Finding that Villarreal was a habitual offender, *see* Tex. Pen. Code Ann. § 12.42(d) (West Supp. 2005), punishment was assessed at two 28-year prison terms, to be served concurrently.

**DISCUSSION**

**Hearsay statements and Confrontation Clause**

In his first issue, Villarreal asserts that the district court abused its discretion in admitting as excited utterances Tibuna's accounts of Maria's and Andrea's statements to him and also violated his right to confrontation.[2] *See* U.S. Const. amends. VI, XIV; *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400, 403-04 (1965). When the issue of whether a statement qualifies as an excited utterance is raised alongside the issue of whether the admission of the statement violates the Confrontation Clause, we address the former issue first. *See Lagunas v. State*, 187 S.W.3d 503, 512 (Tex. App.—Austin 2005, pet. ref'd).

We review the district court's admission of Maria's and Andrea's hearsay statements as excited utterances under the abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id*. (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). For hearsay to be admissible, it must fall within an exception provided by a statute or the rules of

---

[2] The State contends that Villarreal waived his Confrontation Clause claim because he failed to object to the officer's testimony on this basis. *See* Tex. R. App. P. 33.1; *Bunton v. State*, 136 S.W.3d 355, 368-69 (Tex. App.—Austin 2004, pet. ref'd). The record reflects that Villarreal objected on this basis near the beginning of Tibuna's testimony and that Villarreal renewed this objection throughout Tibuna's testimony. We conclude that Villarreal preserved this issue for our review.

evidence. Tex. R. Evid. 802. One such exception is that for excited utterances. Tex. R. Evid. 803(2). An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id*.; *Zuliani*, 97 S.W.3d at 595; *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). The basis for the excited utterance exception is a psychological one, namely, the view that when someone is in "the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the 'truth will come out.'" *Zuliani*, 97 S.W.3d at 595 (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). Underlying the exception is the belief that an excited utterance, unlike hearsay generally, tends to be trustworthy because it represents an event speaking through the person rather than the person speaking about the event. *Zuliani*, 97 S.W.3d at 595; *Ricondo v. State*, 475 S.W.2d 793, 796 (Tex. Crim. App. 1971).

In determining whether a hearsay statement is admissible as an excited utterance, the ultimate inquiry is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement was made. *Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005) (citing *Zuliani*, 97 S.W.3d at 596). The court may consider factors such as "the length of time between the occurrence and the statement, the nature of the declarant, whether the statement was made in response to a question, and whether the statement is self-serving." *Id*. However, no single factor is dispositive, but merely bears on our ultimate determination. *Zuliani*, 97 S.W.3d at 596; *see also Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995); *Penry v. State*, 903 S.W.2d 715, 750-51 (Tex. Crim. App. 1995); *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992).

7

Officer Tibuna testified that Maria was "crying hysterically" when he encountered her in the bedroom. He also testified that Maria was so upset that she could not immediately respond to his questions and appeared to be under the stress of some exciting event that, in his opinion, had occurred recently, probably "within a few minutes." Given these facts, we conclude that the district court did not abuse its discretion in finding it unlikely that Maria had engaged in "reflective thought" that would have compromised the reliability of her statement that Villareal had slapped her. *See Zuliani*, 97 S.W.3d at 595. To the contrary, it is reasonable to conclude that Maria acted in a manner consistent with a person "still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement was made. *Apolinar*, 155 S.W.3d at 186-87.

As for Andrea's statements, Tibuna testified that Andrea was calm when he first encountered her and was calm "at first" when she entered the bedroom where her mother was. However, Tibuna also testified that Andrea's demeanor began to change once she saw her mother crying hysterically and that, shortly thereafter, she became upset and began crying as well. Tibuna further testified that at this point, Andrea also appeared "to be under the stress and the excitement of the situation," which Tibuna testified "occurred a few minutes prior to" his arrival. It is reasonable to conclude that a person, upon having just witnessed her mother being assaulted a few minutes earlier, and now observing her "crying hysterically," would "still [be] dominated by the emotions, excitement, fear, or pain of the event or condition" when she made her statements to Tibuna. *Id*. Although the admission of Andrea's statements is a closer call than the admission of Maria's statements, we do not believe the district court's decision to admit the statements was "so

8

clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Zuliani*, 97 S.W.3d at 595.

Having concluded that the district court did not abuse its discretion in admitting Maria's and Andrea's statements to Officer Tibuna as excited utterances, we now turn to Villarreal's Confrontation Clause argument. In deciding the constitutional issue presented, we review the trial court's ruling *de novo*. *Lagunas*, 187 S.W.3d at 513-14; *Muttoni v. State*, 25 S.W.3d 300, 304 (Tex. App.—Austin 2000, no pet.). The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the admission of a hearsay statement made by a non-testifying declarant violates the Sixth Amendment if the statement was testimonial, and if the defendant lacked a prior opportunity for cross-examination. 541 U.S. at 68.

However, the Supreme Court noted that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id*. at 59 n.9. The Confrontation Clause is not violated when the declarant is present at trial because the declarant is available to defend or explain the hearsay statements. *See id*. Maria and Andrea, the complainants in this case, were both called by the State to testify, and Villarreal had the opportunity to cross-examine each of them about the statements they made to Officer Tibuna—and, in fact, did so. Therefore, the Confrontation Clause was not violated in this case.

Villarreal would have us disregard, for purposes of our Confrontation Clause analysis, the fact that Maria and Andrea each testified at trial because, he contends, the State called the pair purely to elicit "otherwise inadmissible impeachment testimony." Villarreal raises this complaint as an independent ground for reversal in his second issue, which we address below. As it bears upon his Confrontation Clause issue, we see nothing in *Crawford* or the Supreme Court's more recent Confrontation Clause guidance that would make such a complaint a basis for finding a Confrontation Clause violation, as the subject witnesses each testified at trial. *See Davis v. Washington*, 126 S. Ct. 2266, 165 L. Ed. 2d 224, 237-43 (2006); *Crawford*, 541 U.S. at 59 n.9; *see also Lagunas*, 187 S.W.3d at 514. We overrule Villarreal's first issue.

**Maria and Andrea's testimony**

In his second issue, Villarreal contends that the district court erred in allowing the State to call Maria and Andrea to testify "for the primary purpose of eliciting otherwise inadmissible impeachment testimony . . . as a subterfuge to avoid the hearsay rule." Villarreal asserts that the only reason the State forced Maria and Andrea to testify was in order to get their prior inconsistent statements to Officer Tibuna before the jury.

The Texas Rules of Evidence permit any party, including the party that called the witness, to use a witness's prior inconsistent statements as a means of impeachment. *See* Tex. R. Evid. 607. However, the "right to impeach one's own witness by use of a prior inconsistent statement does not extend to employment of such impeachment as a mere subterfuge to get otherwise inadmissible hearsay evidence before a jury." *Pruitt v. State*, 770 S.W.2d 909, 909 (Tex. App.—Fort Worth 1989, pet. ref'd). A party may not call a witness it knows to be hostile for the primary

10

purpose of eliciting otherwise inadmissible impeachment evidence. *See Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999); *Arrick v. State*, 107 S.W.3d 710, 722 (Tex. App.—Austin 2003, pet. ref'd). In such a case, the party profits from the witness's testimony only if the jury misuses the impeaching evidence by considering it for its truth, and thus any probative value the impeachment evidence might have is substantially outweighed by its prejudicial effect. Tex. R. Evid. 403; *Hughes*, 4 S.W.3d at 5; *Ramirez v. State*, 987 S.W.2d 938, 944 (Tex. App.—Austin 1999, no pet.)

The State disputes Villarreal's accusation that it called Maria and Andrea solely to elicit impeachment testimony. Among other things, the State observed, it called the witnesses to avoid a potential Confrontation Clause problem. But even assuming it was error for the district court to permit Maria and Andrea to testify, we conclude that such error would be harmless. Before the State called Maria and Andrea, the jury had already heard the substance of their statements through Officer Tibuna's testimony. Thus, there was no harm from the jury's potential consideration of Maria and Andrea's prior statements, used by the State to impeach them, as substantive evidence. In addition, there was other evidence in the record that Villareal assaulted Maria and Andrea. Tibuna testified to observing bruises on Maria and Andrea, and photographs of Maria and Andrea with visible bruising were admitted into evidence. We also note that Villareal does not contest the sufficiency of the evidence to sustain his conviction. We overrule Villarreal's second issue.

**Punishment**

In his third issue, Villarreal contends that his punishment of 28 years' confinement is cruel and unusual in violation of the Eighth Amendment. *See* U.S. Const. amend. VIII. Villarreal asserts that "a slap on the face and a grabbing by the neck" do not justify imprisonment for 28 years.

11

But Villarreal had previously been convicted of two felony offenses and thus could have received a sentence ranging from a maximum sentence of life imprisonment to a minimum sentence of 25 years. *See* Tex. Pen. Code Ann. § 12.42(d). His sentence was near the low end of the spectrum. As a general rule, if the punishment assessed is within the range prescribed by the legislature, it is not cruel and unusual. *Samuel v. State*, 477 S.W.2d 611, 614-15 (Tex. Crim. App. 1972). Nor do we find any other basis for concluding that Villarreal's punishment as a habitual felony offender—based on prior convictions for burglary and voluntary manslaughter—was cruel and unusual. We overrule Villarreal's third issue.

## CONCLUSION

Having overruled Villarreal's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: July 21, 2006

Do Not Publish

12