

# NUMBER 13-17-00120-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TORIVIO "TOBY" GUTIERREZ,**                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                 **Appellee.**

---

### On appeal from the 24th District Court
### of Goliad County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Tijerina
### Memorandum Opinion by Justice Tijerina

A jury convicted appellant Torivio "Toby" Gutierrez of murder and assessed punishment at twenty years' imprisonment. *See* TEX. PENAL CODE ANN. §19.02. By one issue, he argues the trial court erred in permitting the State to elicit extraneous conduct testimony. We affirm.

## I.  BACKGROUND

At trial, Gutierrez's relative, Alfred "Bubba" Guerra, testified that Gutierrez was upset with the deceased, Christoval Garza, months preceding his murder, and Gutierrez planned to "whip his ass for it." The evidence established that Gutierrez and three others,[1] including Garza, were coming back to Gutierrez's property after a night of drinking at a local bar. Guerra was asleep inside a trailer home on Gutierrez's property, but he heard the men arrive. Shortly thereafter, Garza was attacked and severely beaten. When the men entered the trailer home, Guerra heard them "bragging" and laughing about the beating they had just inflicted on Garza. According to Guerra, he heard Gutierrez thanking the others for their help with the attack. Guerra heard someone tell Gutierrez, "did you see that I hit him in the head with my steel-toed boots . . . I'll do anything for you," while another said, "We got him[;] we got him real good."

When Guerra discovered Garza's body outside, he told Gutierrez that Gutierrez needed to get over there and clean up his mess to which Gutierrez responded with, "Ah, [Garza's] faking it." Guerra instructed Gutierrez to call the authorities, and when they arrived, they found Garza's dead body facedown on the ground behind the trailer on Gutierrez's property.

The forensic pathologist testified that Garza suffered blunt force trauma consistent with blows administered by fists or feet, head injuries, abrasions and contusions, broken ribs, a punctured lung, and a lacerated spleen.

The State called Christine Dominguez who testified to the identical assault of her father, Chris Dominguez, about one year before Garza's murder. Gutierrez objected

---

[1] Two other men who allegedly participated in and witnessed Garza's murder died before Gutierrez's trial.

under relevance, hearsay, and Rules 404 and 403. *See* TEX. R. EVID. 401, 403, 404, 801. After an extraneous offense hearing, which the trial court conducted a balancing test, the trial court admitted the evidence as an excited utterance and specifically found that the probative value of the testimony outweighed the prejudicial effect. *See id*. R. 403. Before the jury, Dominguez recalled that thirteen months earlier, Gutierrez and another person severely beat Chris with their fists under very similar circumstances. According to Dominguez, Chris was hospitalized at least four times after the beating, and spent most of his time in the hospital. He died approximately three months after the beating. Like Garza, Chris was beaten on Gutierrez's property near Gutierrez's trailer home and during very early morning hours. According to Dominguez, within minutes after being assaulted, Chris told her that Gutierrez was the assailant.[2]

Gutierrez's wife, Deidre Gutierrez, testified on Gutierrez's behalf. According to Deidre, on the night in question, Garza and Guerra walked off onto the highway together, and Guerra returned without Garza. She claims that Gutierrez was with her at the time Garza was murdered, so Gutierrez could not have murdered Garza. Moreover, she testified that Gutierrez injured his hand a week earlier and therefore he was incapable of injuring Garza.

A jury convicted Gutierrez of murder, and this appeal followed. *See* TEX. PENAL CODE ANN. §19.02.

## II.    EXTRANEOUS OFFENSE

Gutierrez specifically argues that Dominguez's testimony regarding Chris's assault was hearsay, was irrelevant to Garza's murder, and the prejudicial harm outweighed the

---

[2] According to the State, Gutierrez claimed he beat Garza in self-defense and was not charged for this crime.

probative effect. We disagree.

## A.   Standard of Review

We review a trial court's decision to admit or exclude evidence as well as its decision as to whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

## B.   Relevance and Rule 403 Balancing Test

Relevant evidence is always admissible unless specifically prohibited. *See* Tex. R. Evid. R. 402; *see also id*. R. 401 (providing that "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action"). First, the extraneous offense was relevant because it showed intent and identity. Here, Gutierrez denied any involvement in Garza's murder, so the evidence of the extraneous offense was admissible to rebut the defensive theory that Guerra was the perpetrator. *See De La Paz v. State*, 279 S.W.3d 336, 343–45 (Tex. Crim. App. 2009) ("One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense."); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Additionally, the attacks of Chris and Garza were virtually identical, and Gutierrez's involvement in an identical offense just one year before the murder in the present case is relevant to show Gutierrez intended to cause Garza's death. *See Taylor v. State*, 920 S.W.2d 319, 322. (Tex. Crim. App. 1996). Thus, the trial court did not err in

4

determining the extraneous offense was relevant. *See De La Paz,* 279 S.W.3d at 345.

Nonetheless, the trial court must still determine if the probative value of the evidence is outweighed by the danger of unfair prejudice by engaging in a Rule 403 analysis. *See* TEX. R. EVID. R. 403. The following factors should be considered in making this analysis: (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous offense evidence to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence; and (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *De La Paz*, 279 S.W.3d at 349. "The balance is always slanted toward admission, not exclusion, of otherwise relevant evidence." *Id*. at 343. Furthermore, Rule 403 does not require exclusion of evidence simply because it creates prejudice; the prejudice must be "unfair." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

As previously stated, the evidence of the extraneous offense was probative to rebut Gutierrez's denial and that Guerra was the perpetrator. Accordingly, the trial court did not err in determining the extraneous offense made it more probable that Gutierrez committed the murder. *See De La Paz,* 279 S.W.3d at 345. Additionally, both the charged offense and the extraneous offense involve assaults by beating. When the extraneous offense is "no more heinous" than the charged offense, it is "not likely to create such a prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose." *Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996).

By one sentence, Gutierrez asserts that the jury "was confused about what the separate assault had to do with the instant case;" however our review of the record shows

5

that the State spent minimal time developing Dominguez's testimony, and it was neither lengthy nor graphic. It is unlikely that the jury was impressed in some irrational or indelible way. *See Bargas v. State*, 252 S.W.3d 876 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Lastly, the State's need for the extraneous-offense evidence is significant: two eyewitnesses to Garza's murder were deceased at the time of Gutierrez's trial and the State did not have any forensic evidence, so Dominguez's testimony had a high probative value identifying Gutierrez as the perpetrator. *See* TEX. R. EVID. 401.

In light of these facts, we hold that trial court's ruling that the danger of unfair prejudice did not substantially outweigh the probative value of the extraneous offense is within the zone of reasonable disagreement. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003) (holding that a trial court's 403 ruling on admitting extraneous-offense evidence must be upheld so long as it is "within the zone of reasonable disagreement"). Therefore, the trial court did not abuse its discretion under Rule 403 in admitting the extraneous offense evidence.

## C. Hearsay

Hearsay is defined as a statement, other than one made by the declarant while testifying at the current trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible; however, the Texas Rules of Evidence contain several exceptions under which hearsay is deemed admissible. *Id*. R. 802, 803.

An excited utterance is an exception to the hearsay rule and is defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* R. 803(2). The reasoning behind the excited

6

utterance exception is psychological: when a person is in the instant grip of violent emotion, excitement, or pain, that person ordinarily loses capacity for the reflection necessary for fabrication, and the truth will come out. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event. *Id*.; *Ricondo v. State*, 475 S.W.2d 793, 796 (Tex. Crim. App. 1971). A court may consider factors such as the time elapsed and whether the statement was in response to a question to determine whether a hearsay statement is admissible as an excited utterance. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). The focus must remain on whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event at the time of the statement. *Id*. In short, we determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Zuliani*, 97 S.W.3d at 596.

At trial, Dominguez testified that Chris appeared at her doorstep immediately after he was severely beaten, with a busted nose and swollen lips, torn clothing, blood on his face, upper body, arms and pants, and a bloody towel. Dominguez testified that he was upset and falling to his knees. She asked Chris what happened to him, and he stated that Gutierrez jumped him for no reason. She called 9-1-1, and Chris was transported to the hospital. Thus, the evidence supports the trial court's reasonable conclusion that Chris relayed the statement to his daughter while he was still dominated by the emotions, excitement, fear, or pain of the startling event. *See Salazar*, 38 S.W.3d at 154. It is clear from her testimony that Chris's "worked up" exclamations occurred close in time to when he was assaulted. *See id.* In light of this evidence, the trial court did not abuse its

discretion in overruling the hearsay objection pursuant to the excited utterance exception. *See Moon v. State*, 44 S.W.3d 589, 594 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that the court did not abuse its discretion in admitting hearsay testimony under the excited utterance exception when the victim told the testifying officer that her husband "beat her" and only thirty minutes had elapsed since assault).

## D.    Modus Operandi

"[E]vidence of a defendant's particular modus operandi is a recognized exception to the general rule precluding extraneous offense evidence, if the modus operandi evidence tends to prove a material fact at issue, other than propensity." *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992). Modus operandi refers to "a defendant's distinctive and idiosyncratic manner of committing criminal acts." *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005). Although the modus operandi theory of admissibility under Rule 404(b) usually refers to evidence offered to prove the identity of a specific person, its use is not so limited in the law. *See* TEX. R. EVID. 404(b) (providing that extraneous evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident). Modus operandi may also encompass the "doctrine of chances" theory to show lack of consent, motive, and the manner of committing an offense. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). "[E]vidence of a remarkably similar act might be admissible to prove the corpus delicti (the crime itself), intent, or lack of consent under 'the doctrine of chances.'" *Daggett v. State*, 187 S.W.3d 444, 453 n 18 (Tex. Crim. App. 2005).

Here, Garza and Chris were assaulted under similar circumstances: they were

both severely beaten by fists; they were both helpless[3]; they were both assaulted on Gutierrez's property; they were both assaulted near the trailer home; they were both assaulted in the early morning hours; and they were both assaulted almost one year apart. The similarities between the charged offense and the extraneous offense were so unusual and idiosyncratic that it could be determined to be the handiwork of the same person. *See Martin*, 173 S.W.3d. at 468. Thus, we conclude that the facts in this case show a modus operandi sufficiently distinctive to qualify as an exception to the general rule precluding the admission of extraneous offense evidence, and the trial court did not abuse its discretion when it admitted the evidence on this basis. S*ee id*. We overrule Gutierrez's sole issue.

### III.    CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of March, 2020.

---

[3] Garza was merely 121 pounds when he was attacked by a group of people, and Chris was inside his vehicle when Gutierrez and one other person attacked him.